IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DEBORAH WEAVER and
CHARLES WEAVER,

    Plaintiffs,

    v.                                                   No. 1:24-cv-01225-SMD-JHR

SAFECO INSURANCE COMPANY OF AMERICA,
PROGRESSIVE NORTHERN INSURANCE COMPANY,
JOSEPH C. BUCHANAN,
OHIO SECURITY INSURANCE COMPANY, and
DEBORAH WEAVER, as personal representative of the
ESTATE OF JOHN WEAVER,

    Defendants.

**MEMORANDUM ORDER**

THIS MATTER is before the Court on Plaintiffs' Motion to Remand, Doc. 13 ("Mot. to Remand"), filed January 3, 2025. Defendants filed their response on January 27, 2025. Doc. 24 ("Defs.' Resp."). Plaintiffs filed their reply on February 13, 2025. Doc. 31 ("Pls.' Reply"). The Court has reviewed the parties' submissions, the record, and the relevant law, and for the reasons below, the Motion is **DENIED**.

Because the Court concludes that Plaintiffs have no viable cause of action against Defendant John Weaver's estate and that the estate was fraudulently joined, the negligence claim against the estate is dismissed without prejudice from this action. This dismissal follows from the Court's ruling denying remand and does not rest on the arguments raised in Defendants' Motion to Dismiss (Doc. 2), Plaintiffs' response to that motion (Doc. 14), and Defendants' reply (Doc. 23). Accordingly, the Motion to Dismiss addressing the same negligence claim is **DENIED AS MOOT**.

## BACKGROUND

The following recitation of events is based on Plaintiffs' complaint, Doc. 1-1 ("Compl."), the statement of relevant facts set forth on pages one through two of their motion to remand, (Mot. to Remand), and Defendants' notice of removal, Doc. 1.

On June 20, 2021, John Weaver died in a single-vehicle accident on Interstate 40 while driving a Harley-Davidson motorcycle. Compl. ¶¶ 3, 21. Plaintiffs allege that Weaver had consumed alcohol, was driving at an unsafe speed, and failed to maintain a proper distance, causing him to lose control of the motorcycle. Compl. ¶¶ 22, 33. There is no allegation that anyone other than Weaver was involved in the crash. According to the complaint, Weaver maintained a close and mutually dependent relationship with his parents before his death. *Id.* ¶ 18.

On June 18, 2024, Plaintiffs Deborah Weaver and Charles Weaver, the parents of the deceased, filed suit in the Second Judicial District of Bernalillo County against Safeco Insurance company ("Safeco"), Progressive Northern Insurance Company ("Progressive"), Joseph Buchanan (the claims adjuster for Progressive), Ohio Security Insurance Company ("Ohio Security"), and, notably, the estate of their own deceased son. *See* Compl. at 1; Doc 1 at 2. The decedent's mother, Deborah Weaver, now serves as the personal representative of the estate. Mot. to Remand at 2.

Plaintiffs bring a negligence claim against their son's estate. They allege that John Weaver operated his motorcycle negligently or recklessly, drove at an unsafe speed, and lost control, causing the crash that resulted in his death. Compl. ¶ 33. Because of this alleged negligence, his parents sustained a loss of consortium. *Id.* ¶ 34. Building on that theory, Plaintiffs further contend that the estate of John Weaver is legally responsible to his parents for the negligent conduct and the resulting harm. *Id.* The negligence claim is the only cause of action asserted against the estate. *See id.* 31–34.

On December 24, 2024, Defendants removed the case to this Court under 28 U.S.C. § 1332 and § 1441, invoking diversity jurisdiction. Doc. 1 at 1, 2, 3. Defendants contend that removal was proper because the out-of-state insurance companies are diverse from Plaintiffs, who reside in Bernalillo County, New Mexico. *Id*. at 4. Although the complaint identifies the estate of John Weaver as a New Mexico resident, Defendants argue that it was fraudulently joined to defeat diversity jurisdiction because Plaintiffs cannot establish a viable negligence claim against their deceased son's estate. *Id*. at 5, 8.

Plaintiffs move to remand, disputing the existence of diversity and maintaining that their negligence claim against their son's estate is actionable. *See* Mot. for Remand at 2, 8.

**LEGAL STANDARD**

I. <u>Procedure Governing Removal</u>

The relevant removal provisions are set forth in Sections 1441 and 1446 of Title 28 of the United States Code. *See Paros Props. LLC v. Colo. Cas. Ins. Co.*, 835 F.3d 1264, 1268 (10th Cir. 2016); *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1138 (10th Cir. 2014); *Mach v. Triple D Supply*, 773 F. Supp. 2d 1018, 1030–31 (D.N.M. 2011). Removal to federal court is authorized for "any civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction." *See* 28 U.S.C. § 1441; *Salzer*, 762 F.3d at 1138; *Ham v. CarMax Auto Superstores, Inc.*, No. 1:23-CV-01057-DHU-JFR, 2024 WL 2091862, at *2 (D.N.M. May 9, 2024).

Defendants removed this case to federal court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332 (a). To invoke diversity jurisdiction, "a party must show that complete diversity of citizenship exists between the adverse parties and that the amount in controversy exceeds $75,000." *Dutcher v. Matheson*, 733 F.3d 980, 987 (10th Cir. 2013). "Complete diversity is

3

lacking when any of the plaintiffs has the same residency as even a single defendant." *Id.*; *see also* § 1332(a)(1); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005) ("Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State."); *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006); *Anderson v. XTO Energy, Inc.*, 341 F. Supp. 3d 1272, 1275 (D.N.M. 2018).

Ambiguities should be resolved in favor of remand because "there is a presumption against removal jurisdiction." *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995); *see Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941); *Fajen v. Found. Rsrv. Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982).

II. <u>Fraudulent Joinder</u>

However, fraudulent joinder is an exception to the requirement of complete diversity when there is no cause of action stated against a resident defendant or when no cause of action exists. *See Long v. Halliday,* 768 F. App'x 811 (10th Cir. 2019); *Roe v. Gen. Am. Life Ins. Co.*, 712 F.2d 450, 452 (10th Cir. 1983); *Smoot v. Chi., Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 881–82 (10th Cir. 1967); *Anderson*, 341 F. Supp. 3d at 1276.

"To establish [fraudulent] joinder, the removing party must demonstrate . . . inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smoot*, 378 F.2d at 882; *Dutcher*, 733 F.3d at 988; *Childers v. FedEx Ground Package Sys., Inc.*, 735 F. Supp. 3d 1393, 1400 (D.N.M. 2024). In evaluating a claim of fraudulent joinder, "all doubts are to be resolved against removal." *Fajen*, 683 F.2d at 333. In other words, the removing party "bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Dutcher*, 733 F.3d at 988; *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x

4

911, 913 (10th Cir. 2006). The standard is "more exacting than that for dismissing a claim[,]" and only when defendants have shown with "complete certainty" that recovery is impossible, may the court infer that joinder was fraudulent. *See Anderson*, 341 F. Supp. 3d at 1276; *Hurtado v. AM Transp. Servs., Inc.*, Civ. No. 22-cv-0599-KG-JFR, 2023 WL 5726194, at *3 (D.N.M. Sept. 5, 2023) (quoting *Montano v. Allstate Indem. Co.*, No. 99-2225, 2000 WL 525592, at *2 (10th Cir. Apr. 14, 2000); *Childers*, 735 F. Supp. 3d at 1400.

Once fraudulent joinder is proven, the district court should disregard the fraudulently joined non-diverse party for removal purposes. *See* 28 U.S.C. § 1332; *Dutcher*, 733 F.3d at 988; *Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013); *Anderson*, 528 F. App'x at 795; *Lenon v. St. Paul Mercury Ins. Co.*, 136 F.3d 1365, 1369 (10th Cir. 1998); *Smoot*, 378 F.2d at 881–82; *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th. Cir. 1964).

## DISCUSSION

The Court's jurisdiction over this matter depends on whether complete diversity of citizenship exists, which turns on whether fraudulent joinder occurred. *See* 28 U.S.C. § 1441; *Salzer*, 762 F.3d at 1138. Once the removing party establishes fraudulent joinder, the Court will disregard the non-diverse party for the purpose of assessing diversity. *See Dutcher*, 733 F.3d at 988; *Smoot*, 378 F.2d at 881–82.

The question is whether Defendants have met their heavy burden to show that Plaintiffs have no viable cause of action in state court against the non-diverse defendant, John Weaver's estate, which was allegedly joined solely to defeat diversity. *Schmidt v. Int'l Playthings LLC*, 503 F. Supp. 3d 1060 (D.N.M. 2020) ("[T]here is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court."); *Zufelt v. Isuzu Motors Am., L.L.C.*, 727 F. Supp. 2d 1117, 1124–25 (D.N.M. 2009). The removing party's burden to prove a

5

fraudulent joinder is more demanding than the Rule 12(b)(6) standard for dismissal. *Montano*, 2000 WL 525592, at *5 ("This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6)."). Accordingly, this Court must resolve all disputed facts and legal ambiguities in Plaintiffs' favor and determine whether any possibility of recovery exists against John Weaver's estate for negligence and loss of consortium. *Id.*

      I.      <u>Plaintiffs have not established a viable tort duty.</u>

Defendants contend that Plaintiffs' negligence claim against their son's estate fails as a matter of law because John Weaver owed no legal duty to his parents to avoid harming himself. Defs.' Resp. at 3. The Court agrees.

Under New Mexico law, as in common law generally, a negligence claim requires proof of four elements: (1) duty, (2) breach, (3) causation, and (4) damages. *Charlie v. Rehoboth McKinley Christian Health Care Servs.*, 598 F. Supp. 3d 1145, 1152 (D.N.M. 2022); *see Ajaj v. United States*, 293 F. App'x 575, 581 (10th Cir. 2008). The existence of a duty is a threshold question. Without a duty, there can be no negligence.

The New Mexico Supreme Court's decision in *Rodriguez v. Del Sol* controls the duty analysis. *See Rodriguez v. Del Sol Shopping Ctr. Assocs., L.P.*, 326 P.3d 465 (N.M. 2014). The court held that "foreseeability is not a factor for courts to consider when determining the existence of a duty." *Id.* at 467. Rather, when a court limits or eliminates an existing duty, it must "articulate specific policy reasons, unrelated to foreseeability considerations." *Id*. The court explained that foreseeability is a fluid concept that varies with the specific facts and circumstances of each case and, for that reason, is an inquiry reserved for the fact finder. *Id*.

New Mexico law therefore treats the existence of a duty as a question of law, while foreseeability and breach are matters for the jury. To determine whether the law recognizes a legal

6

duty of care, courts should focus on policy considerations informed by "legal precedent, statutes, and other principles of law." *Fed. Deposit Ins. Corp. v. Dee*, 222 F. Supp. 3d 972, 1015 (D.N.M. 2016); *Herrera v. Quality Pontiac*, 73 P.3d 181, 186 (N.M. 2003). The Supreme Court of New Mexico has explained that policy-based reasoning may rest on legislative intent or on the social consequences of altering an existing duty. *See Baldonado v. El Paso Nat. Gas Co.*, 176 P.3d 286 (N.M. 2006) (holding that public policy, including encouraging rescues and discouraging intentional harm, warranted modifying the firefighter's rule); *Rodriguez*, 326 P.3d at 469; *Calkins v. Cox Ests.*, 792 P.2d 36, 39. (N.M. 1990) ("The existence of a duty is a question of policy to be determined with reference to legal precedent, statutes, and other principles comprising the law.").

Plaintiffs advance a broad view of the duty of care, asserting that "in New Mexico, every person has a duty to exercise ordinary care for the safety of the person and property of others." Mot. to Remand at 4 (citing *Serna v. Fam. Dollar Stores of N.M., Inc.*, No. 2:20-cv-00090-KRS-GBW, 2020 WL 2840320, at *7 (D.N.M. June 1, 2020)); Pls.' Reply at 3–4; *see also Yount v. Johnson*, 915 P.2d 341, 342 (N.M. Ct. App. 1996). Expanding that reasoning, they argue that New Mexico law recognizes a universal duty of ordinary care that "everyone has a duty towards everyone else." Mot. to Remand at 6.

Plaintiffs reject Defendants' contention that a motorist's common law and statutory duties extend only to other motorist and pedestrians. Mot. to Remand at 5. They rely on various cases and statutory provisions that, in their view, reflect New Mexico's broad approach to defining a driver's duty of care. For example, they invoke the New Mexico Mandatory Financial Responsibility Act ("MFRA"), N.M. Stat. Ann. §66-5-201 (1978), asserting that New Mexico courts have interpreted the statute expansively to promote accountability and public safety. Mot. to Remand at 5–6 (citing *Thompson v. City of Albuquerque*, 397 P.3d 1279, 1284 (N.M. 2017)).

Plaintiffs also cite decisions holding that restrictions on a plaintiff's recovery are disfavored or unenforceable, emphasizing that New Mexico courts interpret the law liberally to expand avenues of recovery for injured parties. Mot. to Remand at 6 (first citing *Jolley v. Assocs. Elec. & Gas Ins. Servs., Ltd.*, 237 P.3d 738 (N.M. 2010); then citing *State Farm Mut. Auto. v. Ballard*, 54 P.3d 537 (N.M. 2002); and then citing *Estep v. State Farm Mut Auto.*, 703 P.2d 882 (N.M. 1985)).

Plaintiffs further cite jury instructions defining reckless driving statutes, contending that these authorities reflect the legislature's intent to define a driver's duty expansively and with few restrictions. *See* N.M. Stat. Ann. §66-8-113(A) ("Any person who drives any vehicle carelessly and heedlessly . . . so as to endanger or be likely to endanger any person or property is guilty of reckless driving."); Pls.' Reply at 4. Drawing on these authorities, they maintain that New Mexico recognizes a general duty of ordinary care owed by every driver to every other person, including the driver's parents, regardless of whether they were present at the crash. From this premise, they reason that John Weaver owed a duty not to harm himself in a way that would cause his parents to suffer loss of consortium. Mot. to Remand at 6.

Defendants counter that Plaintiffs identify no New Mexico statute or common law authority establishing a duty owed by a tortfeasor not to injure himself to protect his parents from loss of consortium. Defs.' Resp. at 3. They observe that the cases Plaintiffs cite all involve distinct parties, and that no New Mexico authority supports extending recovery to family members when the tortfeasor and victim are the same individual. *Id*. at 4.

The Court agrees that no policy considerations support such a drastic expansion of the driver's duty. Plaintiffs have not shown that John Weaver owed his parents a duty to avoid self-harm through negligent driving. They have not sufficiently supported the leap from "every person

8

has a duty to exercise ordinary care for the safety of others" to "everyone has a duty towards everyone." *See* Mot. to Remand at 4, 6.

The Court also disagrees with Plaintiffs' interpretation of New Mexico law. While New Mexico courts have in some circumstances interpreted statutes and common law duties broadly to promote compensation for injured parties, Plaintiffs cite no caselaw or legislative history to suggest that this approach extends so far as to permit recovery by a tortfeasor's own family members for loss of consortium. Plaintiffs' statutory argument improperly expands the scope of "injured third parties" to encompass the tortfeasor's non-present parents, an interpretation that stretches the plain meaning and purpose of the law well beyond its limits. *Jolley*, 237 P.3d at 738. The term "injured third parties" cannot reasonably be read to include the tortfeasor's relatives, who had no other connection to the accident.[1] N.M. Stat. Ann. § 66-5-201.1. Similarly, when the MFRA refers to "financial hardship" and "damages," the most natural reading is that the statute addresses losses sustained by the victims of motor accidents, not by the tortfeasor's family members outside the accident's scope.

Although New Mexico courts have, in certain cases, expanded the scope of tort recovery to protect victims, recognizing a duty owed by a tortfeasor to his own family members would depart from established precedents. *See Allstate Ins. Co. v. Jensen*, 788 P.2d 340, 343 (N.M. 1990); *Estep*, 703 P.2d at 882. Not surprisingly, Plaintiffs cite no case that squarely recognizes such a duty in New Mexico.

---

[1] N.M. Stat. Ann. § 66-5-201.1 establishes the purpose of the MFRA:
> The legislature is aware that motor vehicle accidents in New Mexico can result in catastrophic financial hardship. The purpose of the Mandatory Financial Responsibility Act is to require residents of New Mexico who own and operate motor vehicles upon the highways of the state either to have the ability to respond in damages to accidents arising out of the use and operation of a motor vehicle or to obtain a motor vehicle insurance policy.

*Id.*; *see also* N.M. Stat. Ann. § 66-5-208 (specifying minimum insurance coverage required for "bodily injury to or death of one person in any one accident" and for "injury to or destruction of property of others," thereby creating a pool of funds to compensate victims of at-fault drivers).

The Restatement (Third) of Torts § 7(a), which New Mexico courts have relied on in articulating the general duty of care, provides that "[a]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." *Rodriguez*, 326 P.3d at 467; *see also Hovey-Jaramillo v. Liberty Mut. Ins.*, 535 P.3d 747 at 753 (N.M. Ct. App. 2023). The duty of ordinary care requires individuals to act reasonably to prevent physical harm on others. It does not impose a duty on a person to avoid injuring himself to avoid derivative harms such as loss of consortium, affection, society, or and companionship.

Read together, these authorities suggest that New Mexico law does not extend tort liability to self-directed negligence that results in a family member's loss of consortium.

II. <u>Plaintiffs cannot prove a loss of consortium claim.</u>

Alternatively, Plaintiffs argue that a loss of consortium claim is "independent" under New Mexico law and does not need to be brought together with the underlying personal injury action. They argue that recovery for loss of consortium is not contingent on actual recovery for the underlying tort and that a claimant may pursue consortium damages even when the related tort claim is unsuccessful. Mot. to Remand at 5; *see also Thompson*, 397 P.3d at 1284; *Fernandez v. Walgreen Hastings Co.*, 968 P.2d 774 (N.M. 1998).

Defendants counter that this reading of New Mexico law is mistaken. Instead, they argue that the independent nature of a loss of consortium claim simply means that a claimant may be eligible to bring both a loss of consortium claim and a wrongful-death claim, provided they qualify as a statutory beneficiary under New Mexico's Wrongful Death Act. Defs.' Resp. at 6–7. There is no authority, they contend, suggesting that a loss of consortium claim can exist in isolation without a viable underlying bodily-injury claim. *Id*.

Neither approach fully captures how New Mexico law applies to the loss of consortium claim in this case. To state a claim for loss of consortium, a plaintiff must prove two elements: (1) a "sufficiently close relationship" with the decedent, and (2) the defendant owed a duty of care to the plaintiff. *Wachocki v. Bernalillo Cnty. Sheriff's Dep't*, 265 P.3d 701, 702–03 (N.M. 2011); *Silva v. Lovelace Health Sys., Inc.*, 331 P.3d 958, 967 (N.M. Ct. App. 2014).

While Plaintiffs correctly state that a loss of consortium can still proceed even if the underlying tort claim is unsuccessful, New Mexico law nonetheless requires the physically injured person to at least have a viable cause of action for general damages before a family member may recover for loss of consortium. *Archer v. Roadrunner Trucking Inc.*, 930 P.2d 1155, 1161 (N.M. 1996) (holding that the plaintiff may recover for loss of consortium "only if the injured person has a cause of action for physical injuries" and "be entitled to an action for general damages," but actual recovery for the underlying tort is not required); *see also Turpie v. Sw. Cardiology Assocs., P.A.*, 955 P.2d 716, 718 (N.M. Ct. App. 1998) ("[T]he defendant must be at least potentially liable to the injured [person] before it can be liable to the [claimant] seeking loss of consortium damages.").

As a result, even if Plaintiffs could independently bring a loss of consortium claim, they still have not shown that John Weaver had a viable cause of action for physical injury against himself, or that he owed his parents a duty of care. None of the authorities Plaintiffs rely on provide a persuasive policy justification for recognizing such a novel duty. *Fed. Deposit Ins. Corp.*, 222 F. Supp. 3d at 1015; *Herrera*, 73 P.3d at 186.

Plaintiffs nevertheless ask the Court to depart from existing law to impose such a duty. They contend that because suicide was historically treated as a crime at common law and carried significant repercussions, the same reasoning should apply to fatal accidents resulting from one's

11

own negligence. Pls.' Reply at 5–6. They urge this Court to recognize Weaver's duty to his parents on that basis, reasoning that a fatal injury "produces a ripple effect" that deprives the state of revenue and family members of emotional and financial support. *Id*. at 6. In their view, Weaver's death harmed his parents, who loved and cared for their son and shared a close familial bond. *Id*. The Court cannot plausibly read Plaintiffs' arguments as advocating the revival of civil or criminal liability of action for conduct resulting in one's own death simply because state loses revenue or family loses financial support.

Plaintiffs' policy arguments, though sincere, appeal more to morality than to principles of law. Recognizing a self-directed duty would create boundless and unpredictable liability. Every suicide or accidental self-inflicted death could spawn derivative lawsuits by family members. Such a ruling would also conflict with settled legal principles. Tort law governs relationships between distinct parties. It does not hold a person liable to themselves. For these reasons, the Court concludes that New Mexico does not recognize a legal duty of self-preservation that creates liability to family members. Weaver owed no legal duty to his parents to avoid self-injury, and Plaintiffs' derivative loss of consortium claim cannot proceed. Since Plaintiffs have no possible cause of action against the non-diverse defendant, Weaver is fraudulently joined, and this Court will disregard the citizenship of John Weaver's estate for removal purposes.

III.    Dismissal of Weaver's Estate Without Prejudice

Since the Court determines that Weaver's estate was fraudulently joined, it lacks jurisdiction to reach the merits of the claim asserted against the estate. The proper course is to dismiss the negligence claim without prejudice. *Brazell*, 525 F. App'x at 884; *see, e.g., Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1249 (10th Cir. 2004).

Because the negligence claim against Weaver's estate is dismissed without prejudice, the Court need not reach the merits of Defendants' Motion to Dismiss addressing the same claim. That motion is therefore denied as moot.

## CONCLUSION

**IT IS ORDERED** that Plaintiffs' Motion to Remand is **DENIED** as described above. Defendants' Motion to Dismiss is **DENIED AS MOOT**.

_____
**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**